**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA

     Appellee,

v.

JACKY LYNN MCCOMBER,

     Appellant.

Appeal No. 24-4376

## APPELLANT'S EMERGENCY MOTION FOR STAY OF INCARCERATION PENDING APPEAL AND FOR SINGLE JUDGE REVIEW

# TABLE OF CONTENTS

**Page**

BACKGROUND ....................................................................................................................2

ARGUMENT .......................................................................................................................5

I.     Ms. McComber Does Not Pose a Flight Risk or Danger to the Community...........5

II.    Ms. McComber's Appeal is Not for Purposes of Delay. ........................................7

III.   Ms. McComber's Appeal Raises Substantial and Close Questions Likely To Result in Acquittal or Reduced Sentence. ..........................................................8

        A.    The government failed to present sufficient evidence to support each conviction. .....................................................................................10

        B.    The guidelines range was based on an improper loss calculation. ............18

CONCLUSION....................................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States ex rel. Becker v. Westinghouse Savannah River Co.*,
    305 F.3d 284 (4th Cir. 2002) ................................................... 17

*Maersk Line, Ltd. v. United States*,
    513 F.3d 418 (4th Cir. 2008) ................................................... 16

*Molina-Martinez v. United States*,
    578 U.S. 189 (2016) ............................................................... 23

*United States ex rel. Schutte v. SuperValu Inc.*,
    598 U.S. 739 (2023) .......................................................... 15, 18

*United States ex rel. Spay v. CVS Caremark Corp.*,
    875 F.3d 746 (3d Cir. 2017) .................................................... 17

*United States v. Antoine*,
    2021 WL 3882972 (N.D.W. Va. Aug. 13, 2021) ........................ 9

*United States v. Burgos*,
    94 F.3d 849 (4th Cir. 1996) ..................................................... 19

*United States v. Camara*,
    2005 WL 1806409 (W.D.N.C. July 27, 2005) ........................... 6

*United States v. Carey*,
    2014 WL 295381 (S.D. Cal. Jan. 27, 2014) ............................... 8

*United States v. Dodt*,
    2021 WL 6118162 (4th Cir. Dec. 27, 2021) .............................. 13

*United States v. Foley*,
    783 F.3d 7 (1st Cir. 2015) ....................................................... 23

*United States v. Gallagher*,
    90 F.4th 182 (4th Cir. 2024) .................................................... 18

*United States v. Giancola*,
    754 F.2d 898 (11th Cir. 1985) ................................................... 9

*United States v. Hart*,
    906 F. Supp. 102 (N.D.N.Y. 1995) .......................................... 15

*United States v. Janati*,
    374 F.3d 263 (4th Cir. 2004) ...................................................................13

*United States v. Maher*,
    10 F. Supp. 2d 594 (W.D. Va. 1998) .......................................................10

*United States v. McManus*,
    651 F. Supp. 382 (D. Md. 1987) .................................................................8

*United States v. Miller*,
    753 F.2d 19 (3d Cir. 1985) ........................................................................10

*United States v. Race*,
    632 F.2d 1114 (4th Cir. 1980) ..................................................................14

*United States v. Rufai*,
    732 F.3d 1175 (10th Cir. 2013) .................................................................12

*United States v. Scheur*,
    626 F. Supp. 2d 611 (E.D. La. 2009) .........................................................9

*United States v. Stavrakis*,
    2020 WL 4350009 (D. Md. July 29, 2020).................................................6

*United States v. Steinhorn*,
    927 F.2d 195 (4th Cir. 1991) ....................................................................10

**Statutes**

18 U.S.C. § 287 ..............................................................................................3

18 U.S.C. § 1001 ............................................................................................3

18 U.S.C. § 3143(b) ...........................................................................1, 5, 6, 9, 10

**Court Rules**

Fed. R. App. P. 9(b) .......................................................................................1

Fed. R. App. P. 27(d) ...................................................................................25

Fed. R. Evid. 1006 ........................................................................................13

Fed. R. Civ. P. 29 ......................................................................................3, 4

**Other Authorities**

FAR § 16.207-1 .............................................................................................21

FAR § 16.207-3 ...................................................................................................................16

Pursuant to Fed. R. App. P. 9(b) and 18 U.S.C. § 3143(b), Appellant Jacky Lynn McComber hereby moves for a stay of her sentence of incarceration during the pendency of her appeal. Ms. McComber has remained on release for almost four years since her initial appearance in March 2021 without a single issue, including in the two years since her conviction. The district court agrees that she is not a flight risk nor a danger to the community. The district court also agrees that Ms. McComber's appeal is not for the purpose of delay. Rather, the purpose of Ms. McComber's appeal is to resolve multiple substantial questions that could result in reversal, a sentence that does not include a term of imprisonment, or a reduced sentence of imprisonment less than the expected time it will take to resolve her appeal. Ms. McComber is presently scheduled to report to the Bureau of Prisons on November 7, 2024 to begin serving her 13-month sentence.

Absent a stay of her sentence, Ms. McComber faces significant risk of severe prejudice given that she will likely serve her entire sentence prior to appellate resolution. More than the mere prospect of a "hollow victory if the convictions are reversed," ECF No. 546 at 10 (attached as Exhibit A), Ms. McComber will have served 13 months in federal prison, a serious loss of liberty that will leave her family in dire financial circumstances (on top of the punishment she has already suffered), if she serves the sentence and the convictions are later reversed. That is precisely

the harm the statute is designed to prevent. She therefore requests expedited consideration of this motion by a single judge. *See* L.R. 27(e).

If any case warrants a stay of a sentence pending appeal, it is one like this, where the sentence imposed is one of the core issues raised on appeal. Had the district court ruled in Ms. McComber's favor on the issue of loss to the government, the applicable guidelines range would have been 0-6 months. In addition to this substantial question, Ms. McComber's appeal raises at least one other substantial question that could result in reversal: the government's failure to present sufficient evidence on both the requisite scienter and material falsity elements for each of the 20 counts for which Ms. McComber was convicted.

Ms. McComber filed a motion to stay her sentence pending appeal in the district court on October 4, 2024. The district court denied her motion on November 4, 2024. As Ms. McComber is currently scheduled to begin serving her sentence on November 7, 2024, she respectfully requests expedited consideration of this Motion.

Counsel for Ms. McComber notified government counsel of the instant Motion, but given the late hour of the notification, has not received a response.

## **BACKGROUND**

On February 15, 2023, a jury convicted Ms. McComber of submitting false invoices to the government in violation of 18 U.S.C. § 287 (Counts 1-19), and making false statements to a government investigator in violation of 18 U.S.C.

§ 1001 (Count 20). ECF No. 279.[1] Specifically, the false claims counts alleged that Ms. McComber—at the time, a small business owner and government contractor—inflated her hours on invoices submitted to the government over a 19-month period. Count 20 alleged that Ms. McComber made false statements to investigators from NSA's Office of the Inspector General ("OIG") regarding her timekeeping practices and the accuracy of her invoices.

At the close of the government's case in chief, Ms. McComber moved for judgment of acquittal under Rule 29. ECF No. 264 at 50:11-12. After the district court reserved ruling on the motion (*id.* at 51:3-4), Ms. McComber submitted a written memorandum in support (ECF No. 313), which was later supplemented. ECF No. 359. The district court denied Ms. McComber's Rule 29 motion on March 22, 2024. ECF No. 429.

At sentencing, there was a significant dispute over the amount of loss, which was relevant to calculating the guidelines range. The government alleged a loss of $306,186 based on its estimate of hours properly billed, which would have triggered a 12-point enhancement under U.S.S.G. §2B1.1(b)(1)(G). *See* ECF No. 376, PSR ¶ 68. Ms. McComber argued that the government's loss estimate was not reasonable based on the record evidence and that the government suffered no actual loss because

_____

[1] All ECF citations are to the district court docket, *United States v. McComber*, No. 1:21-cr-0036-ELH (D. Md.).

it received the full benefit of the contract. ECF No. 435 at 37. At the end of Ms. McComber's 3-day sentencing hearing, the district court determined a loss amount of $176,913, resulting in a 10-level enhancement to the base offense level of 6. ECF No. 491 at 67:19-68:7. The resulting total offense level of 16 corresponds to a recommended guidelines range between 21-27 months. *Id.* at 68:18-19. Based on a number of mitigating factors, the district court found that a sentence below the guidelines range was warranted, and sentenced Ms. McComber to a period of incarceration of 13 months, to be followed by two years of supervised release. *Id.* at 87:7-12, 91:19-21. Had the district court accepted Ms. McComber's position that there was no loss to the government, the applicable guidelines range would have been 0-6 months. The district court also ordered restitution in the amount of $176,913, in addition to a special assessment of $2,000. *Id.* at 92:17-19.

The district court adopted the probation officer's recommendation (to which the government had no objection) that Ms. McComber be permitted to self-surrender. *Id.* at 94:23-95:2. Ms. McComber is presently scheduled to report to the Bureau of Prisons on November 7, 2024. *Id.* at 101:25-102:8. Ms. McComber timely filed a notice of appeal on July 12, 2024.

On October 4, 2024, Ms. McComber filed a Motion for Stay of Incarceration Pending Appeal. ECF No. 539. On November 4, 2024, the district court denied Ms. McComber's motion. ECF No. 547 (attached as Exhibit D).

**ARGUMENT**

A stay of Ms. McComber's sentence of incarceration pending appeal is appropriate in this case. Pursuant to 18 U.S.C. § 3143(b), a defendant may seek release pending appeal if she is not likely to flee or pose a danger to a person or the community; if the appeal is not taken for purposes of delay; and if the appeal raises a substantial question of law likely to result in, among other things, reversal or a reduced sentence that would be less than the time it takes to resolve the appeal. 18 U.S.C. § 3143(b)(1). Ms. McComber meets this criteria: she presents no risk of flight or danger to the community; her appeal raises substantial questions challenging her conviction and sentence that would likely result in reversal or reduced sentence, and is not taken for purposes of delay. The district court agreed with Ms. McComber on two of those three requirements. Ex. A at 9 (finding Ms. McComber "has met the requirements of § 3143(b)(1)(A)," proving by clear and convincing evidence that she is not a flight risk or danger to the community); *id.* (finding "no merit to the government's claim that the appeal itself is for the purpose of delay"). The court denied Ms. McComber's motion on the basis that Ms. McComber has not satisfied the "substantial question" prong.

## I. Ms. McComber Does Not Pose a Flight Risk or Danger to the Community.

As demonstrated by Ms. McComber's continuous and complete compliance with all release conditions in the almost four years that she has remained on

supervised release, Ms. McComber does not pose a flight risk or danger to the community. *United States v. Camara*, 2005 WL 1806409, at \*1 (W.D.N.C. July 27, 2005) ("Based on the Defendant's behavior during pretrial release and while awaiting sentencing, he is not likely to flee or to pose a danger to any person or the community pending the appeal.").

Ms. McComber has appeared for every court date since her initial appearance in March 2021, and she has complied with all conditions of her release. *See United States v. Stavrakis*, 2020 WL 4350009, at \*2 (D. Md. July 29, 2020) (finding defendant posed no risk of flight where "he appeared in Court, on time, every time his presence was required, including for the sentencing . . . and without assurance that he would be permitted to surrender"). Further, Ms. McComber has a large family and support network in the district. It is clear that she does not pose any flight risk.

Nor does she pose a danger to the community. Ms. McComber has no prior criminal record or history of violence. She was convicted for non-violent offenses. Ms. McComber is a "devoted mother, daughter, sister, friend[;] [a] person who is selfless, loyal, generous, considerate, kind and caring." ECF No. 491 at 88:19-22. The district court acknowledged the punishments Ms. McComber has already endured just as a result of the prosecution—including loss of her security clearance,

her company, and her livelihood—and recognized that Ms. McComber "is not likely to re-offend." *Id.* at 87-88.

## II. Ms. McComber's Appeal is Not for Purposes of Delay.

The purpose of Ms. McComber's appeal is not to delay, but rather to address substantial, meritorious issues. The district court agreed that the appeal is not for the purposes of delay, noting "it has always been clear that, if convicted, defendant would pursue her right to an appeal." Ex. A at 9. There is zero reason to suggest that Ms. McComber's appeal is for purposes of delay as opposed to the legitimate pursuit of the positions litigated vigorously by undersigned counsel in support of Ms. McComber's motion for judgment of acquittal and during the sentencing phase.

Moreover, the government has acknowledged that Ms. McComber's relatively short sentence of incarceration for a period of 13 months "will likely be further reduced by an award of the standard good time credits." ECF No. 529. By the government's own estimation, Ms. McComber will have already served the entirety of her sentence of incarceration prior to any resolution on appeal. Absent a stay of her sentence pending appeal, Ms. McComber faces significant risk of irreparable harm that would result from serving the entirety of an improper sentence if she is successful on appeal. *See United States v. McManus*, 651 F. Supp. 382, 384 (D. Md. 1987) ("There seems little point to an appeal if the defendant will serve his time before a decision is rendered."); *United States v. Carey*, 2014 WL 295381, at

*4 (S.D. Cal. Jan. 27, 2014) ("[T]he defendant could be forced to serve most or al[l] of his sentence before his appeal has been decided. Incarcerating such a defendant immediately upon conviction could substantially diminish the benefit he would ordinarily receive from an appeal.").

Ms. McComber would be severely prejudiced absent a stay, as she will serve most if not all of her sentence during the pendency of her appeal, significantly undermining her appellate rights. *See United States v. Scheur*, 626 F. Supp. 2d 611, 617 (E.D. La. 2009) (granting bail pending appeal based on, among other factors, the fact that defendants' sentence would be served in whole or large part by the time the appeal is resolved). A stay is warranted here to avoid such irreparable harm.

## III. Ms. McComber's Appeal Raises Substantial and Close Questions Likely To Result in Acquittal or Reduced Sentence.

To satisfy 18 U.S.C. § 3143(b)(1)(B), Ms. McComber must show that her appeal involves substantial questions of law or fact likely to result in, among other things, reversal or a sentence that would be less than the time it takes to resolve the appeal. "[I]n the Fourth Circuit, a 'substantial question of law or fact' is one that presents a 'close question or one that very well could be decided the other way.'" *United States v. Antoine*, 2021 WL 3882972, at *1 (N.D.W. Va. Aug. 13, 2021) (quoting *United States v. Steinhorn*, 927 F.2d 195, 196 (4th Cir. 1991)); *accord United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985) (a substantial question

"is one of more substance than would be necessary to a finding that it was not frivolous").

If the Court finds the appeal raises a substantial question, it must then determine whether the question is likely to result in reversal or a reduced sentence. 18 U.S.C. § 3143(b)(1)(B)(i-iv). The district court summarily dismissed the first issue presented as a basis for Ms. McComber's motion for stay pending appeal, concluding: "I see no reason to revisit the assessment I previously made." Ex. A at 11. But importantly, the statute does not require the district court to "conclude that its own order is likely to be reversed." *United States v. Miller*, 753 F.2d 19, 23 (3d Cir. 1985); *Steinhorn*, 927 F.2d at 196 (adopting analysis in *Miller*). Rather than reading the language of § 3143(b)(1)(B) literally and interpreting it as conditioning the stay on the district court's finding that its own judgment is likely to be reversed on appeal, "[t]he correct approach, universally adopted by the circuit courts of appeal, is to ask whether a reduction would likely result, assuming the appellate court rules in defendant's favor." *United States v. Maher*, 10 F. Supp. 2d 594, 596 (W.D. Va. 1998) (finding that "if the Fourth Circuit were to agree with the [defendant's argument on appeal], a reduction in sentence could occur"); *see also Miller*, 753 F.2d at 23 ("The federal courts are not to be put in the position of "bookmakers" who trade on the probability of ultimate outcome. Instead, that

language must be read as going to the significance of the substantial issue to the ultimate disposition of the appeal.").

Ms. McComber's appeal challenges the sufficiency of evidence to prove material falsity and knowledge required to support each of Ms. McComber's convictions, as well as the loss calculation that resulted in an inflated total offense level of 16. These are close questions that could be decided differently by the Fourth Circuit, and if Ms. McComber's appeal is successful, would result in reversal or a reduced sentence.

### A. The government failed to present sufficient evidence to support each conviction.

The government failed to present sufficient evidence to find Ms. McComber guilty of any of the 20 counts charged in the indictment because it did not prove that any of the invoices submitted to the government were materially false or that Ms. McComber knowingly presented any false claims or knowingly and willfully made a false statement.

***Material Falsity.*** The government was required to prove that Ms. McComber made claims and statements knowing they were false as to a material fact. A claim is false "if it was untrue when made and was then known to be untrue by the person making it or causing it to be made," and a fact is material "if it was capable of influencing the government's decision." ECF No. 429-1 at 60. The government's evidence on material falsity is based entirely on a pyramid of unreasonable

inferences that cannot support a conviction for false claims. *See United States v. Rufai*, 732 F.3d 1175, 1188 (10th Cir. 2013) ("A jury will not be allowed to engage in a degree of speculation and conjecture that renders its finding a guess or mere possibility."). At trial, the government presented witnesses who testified that they did not observe Ms. McComber working the amount of hours that her invoices billed. *See, e.g.*, ECF No. 293 at 23:24-24:2 (S. Weir testifying that Ms. McComber spent "minimal to no[]" time working on the contract). But those same witnesses also testified that they were only physically with Ms. McComber for a small fraction of time each day and had no opportunity to observe whether Ms. McComber was working the remaining hours of the day. *See id.* at 25:18-21 (S. Weir testifying that the only opportunity she had to observe Ms. McComber was the "[t]wenty-five percent or less" of the time spent in the office). The government also presented evidence at trial showing that Ms. McComber was not on-site at the NSA for the majority of the hours she billed. ECF No. 295 at 170-171. But the government maintained that it was not unlawful for McComber to work off-site. *See* ECF 305 at 149 ("The Government does not contend that the Defendant violated the law if she worked off-site."). Nevertheless, relying on a summary spreadsheet that largely focused on the amount of time Ms. McComber spent on-site at NSA, the government repeatedly asked the jury to infer that Ms. McComber was not working because she was off-site much of the time and "some of the work on the Ironbridge contract

concerned classified matters that could not be done off-site." ECF No. 305 at 149:24-150:5. That was not a reasonable inference. As the district court acknowledged at sentencing, Ms. McComber's "entire job was administrative and not classified"; "the work could be done anywhere and it wasn't confined to 9 to 5." ECF No. 491 at 45:14-16; *see* ECF No. 295 at 188:14-24.

Moreover, it is a substantial question in itself whether the spreadsheet at the core of the government's falsity evidence was even admissible, as it was admittedly riddled with errors, *see* ECF No. 379 at 67:1-2 (Agent Benderoth testifying at sentencing hearing that he "was mistaken" about certain dates included on the spreadsheet), and populated with incomplete and unreliable evidence like calendar entries and credit card statements purporting to prove where Ms. McComber was and what she was doing, while crucially omitting evidence of Ms. McComber doing billable work off-site. *See* ECF No. 294 at 97:18-20; *see also United States v. Dodt*, 2021 WL 6118162, at *3 (4th Cir. Dec. 27, 2021) (vacating convictions predicated on inadmissible hearsay introduced at trial through IRS special agent's investigatory analysis and testimony); *see also United States v. Janati*, 374 F.3d 263, 272 (4th Cir. 2004) (explaining that FRE 1006 allows admission of "charts into evidence as a surrogate for underlying voluminous records that would otherwise be admissible into

evidence" if the summarizing chart is an "*accurate* compilation of the voluminous records sought to be summarized").

The government also relied on witness testimony that speculated whether there was enough work for a program manager to do to justify the amount of hours Ms. McComber billed for that role. *See* ECF No. 296 at 43:13-14 (R. Bryant testifying that he did not know what a program manager "would be doing for those many hours"). This testimony came from witnesses who had never been program managers, admittedly did not know what a program manager does, and had reviewed budget forecasts and paid invoices reflecting virtually identical hours for the program manager role on a consistent basis for years. *See* ECF No. 293 at 15:25-16:3 (S. Weir testifying that she "didn't have an understanding of what [Ms. McComber's] responsibilities would have been" as program manager); ECF No. 296 at 25:8-9 (R. Bryant testifying that he did not "know what a program manager exactly has to do").

Moreover, the two statements that form the basis of Ms. McComber's false statements conviction rest entirely on a finding that the invoices were materially false, and likewise there is insufficient evidence to support count 20. *See United States v. Race*, 632 F.2d 1114, 1116 (4th Cir. 1980) (noting in false statements case that "the cornerstone of the stated offense is always the falsity of the statement").

***Knowledge.*** Ms. McComber's appeal also raises a substantial question as to whether the government failed to carry its burden of proving the requisite scienter for each count. *United States v. Hart*, 906 F. Supp. 102, 106 (N.D.N.Y. 1995) ("Whether mens rea exists in a criminal case is obviously nonfrivolous"). To prove knowledge, the government had to establish beyond a reasonable doubt that Ms. McComber acted "voluntarily and purposefully and not by mistake, carelessness, or other innocent reason," and that she "knew [each statement and] claim was false or fictitious." ECF No. 305 at 147:14-19.

This is not a case where the question whether a defendant has "knowingly submit[ted] a false claim to the Government . . . is straightforward." *United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 742 (2023) (internal quotation marks and citation omitted). At issue is a federal regulation governing federal contracts that are inherently difficult to define, *see* FAR § 16.207.3,[2] and a contract with an

---

[2] "This contract type may be used only when"–

    a) The work required cannot otherwise be clearly defined;

    b) The required level of effort is identified and agreed upon in advance;

    c) There is reasonable assurance that the intended result cannot be achieved by expending less than the stipulated effort; . . . .

FAR § 16.207-3.

inherently vague job description for Ms. McComber's position. There was conflicting testimony on what was properly billable under the contract, *see, e.g.*, ECF No. 298 at 47:05-09 (R. Colston—McComber's predecessor—discussing billable tasks as program manager, including "care and feeding"); *id.* at 196:05–23 (J. Nace—contracting official—testifying that he did not think "care and feeding" was within the "scope of the contract"), and under the principle of *contra preferentom*, Ms. McComber's interpretation should control. *See Maersk Line, Ltd. v. United States*, 513 F.3d 418, 423 (4th Cir. 2008).

The government failed to present *any* evidence that Ms. McComber intended to or knowingly did submit materially false invoices. To the contrary, the government's evidence established that month after month, the government approved and paid Ms. McComber's invoices for full-time program manager work that was openly and substantially conducted off-site. Not only did the government approve Ms. McComber's invoices for 19 months without question or complaint, but it did so for equivalent invoices of the prior program manager, who testified that she did not pad her hours. ECF No. 298 at 116:9-13. At no point during the 19-month indictment period did the government voice a concern to Ms. McComber about her billing habits, her time spent off-site, or the amount of billable work available to justify the hours she billed.

Not only was there no evidence that Ms. McComber knowingly submitted false invoices, but the evidence shows that the relevant NSA officials knew about the circumstances underlying Ms. McComber's billing practices (including how she was interpreting her vague job description) both prior to presentment and continuously for the 19 months that they approved her invoices. *See United States ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 289 (4th Cir. 2002) ("[T]he government's knowledge of the facts underlying an allegedly false record or statement can negate the scienter required for an FCA violation."); *United States ex rel. Spay v. CVS Caremark Corp.*, 875 F.3d 746, 751–52 (3d Cir. 2017) ("[If] the government knows and approves of the facts underlying an allegedly false claim prior to presentment, an inference arises that the claim was not knowingly submitted, regardless of whether the claim itself is actually false."). It was not reasonable for a jury to infer Ms. McComber was knowingly defrauding the government when the government knew exactly what she was doing.

In ruling against Ms. McComber on the sufficiency of evidence for knowledge, the court improperly collapsed the elements of material falsity and knowledge and disregarded the lack of any evidence of Ms. McComber's "subjective beliefs"— the standard for proving scienter under the False Claims Act. *See Schutte*, 598 U.S. 739 at 749. The court relied instead on a single inapposite case, *United States v. Gallagher*, 90 F.4th 182 (4th Cir. 2024). *See* ECF No. 429-1 at 65. Beyond

many factual distinctions, this court's decision in *Gallagher* was not a case brought under the False Claims Act and the issue of insufficient evidence of knowledge in particular was not squarely presented on appeal. It should have had no bearing on the court's consideration of knowledge in this case.

Likewise, the government failed to introduce any evidence to support a finding that Ms. McComber knowingly and willfully made false statements regarding her billing practices. Indeed, there was no evidence introduced at trial that Ms. McComber knowingly submitted any false claims to the government, or that she told the OIG investigator her time entries were accurate with knowledge that this was untrue or with the intent to violate the law. To the contrary, Ms. McComber immediately caveated her responses to the investigators with the fact that her time keeping system had been compromised and that she would need to go back and take a look at the entries, Gov. Trial Ex. 20(b) (attached as Exhibit B) at 45:9-14, and later did just that, Gov. Trial Ex. 23(b) (attached as Exhibit C) at 2.

The government's failure to present sufficient evidence to prove material falsity and knowledge required to support each count for which Ms. McComber was convicted presents substantial questions, which are integral to the validity of Ms. McComber's convictions and, if successful on appeal as to either element, would require reversal on all counts. *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir.

1996) ("[W]e shall reverse a verdict if the record demonstrates a lack of evidence from which a jury could find guilt beyond a reasonable doubt.").

## B. The guidelines range was based on an improper loss calculation.

In addition to substantial questions challenging her conviction, Ms. McComber's appeal raises a substantial question relating to the guidelines range applied at sentencing. Ms. McComber argued that the government's estimate of loss was unreasonable based on the record evidence and, because the government had received the benefit of its bargain with the contract, it had suffered no loss. ECF No. 435 at 69-71. The district court agreed that the government's loss estimate was unreasonable, but approximated that Ms. McComber's invoices reflected 15 hours of off-site time per week that was properly billable. ECF No. 491 at 66:9-10 ("That comes to 15 hours a week. I don't know that there's even a justification for that.").[3] Subtracting the remaining off-site hours from the total amount invoiced, the district court estimated the loss amount to be $176,913, resulting in a 10-point enhancement

---

[3] Despite informing the parties prior to sentencing that loss was the most important issue at sentencing, ECF No. 377 at 20, the court had little to work with from the government, whose response to Ms. McComber's objections to the government's loss calculation consisted entirely of a placeholder note: "[Insert text]." ECF No. 474 at 12 ("The Government's **(Unfinished)** Sentencing Reply Brief Concerning Defendant McComber's Multiple Obstructions of Justice and the Amount of the Loss Caused By Her Billing the NSA For Work She Never Performed.").

to the guidelines range. With a criminal history category of I, the corresponding guideline range was between 21-27 months. ECF No. 491 at 68:17-19.

Ms. McComber's base offense level was not disputed at sentencing. The dispute, as relevant here, was "whether the defendant's fraudulent conduct resulted in *pecuniary loss* warranting a further increase in h[er] base offense level." ECF No. 435 at 69 (quoting *United States v. Crummy*, 249 F. Supp. 3d 475, 485 (D.D.C. 2017) (emphasis in original)). As the district court observed at sentencing, "as the victim's monetary loss grows, so too does the enhancement to the defendant's offense level[;] [t]hat's why it's so hotly contested." ECF No. 491 at 30:19-22 (citing *United States v. Banks*, 55 F.4th 246, 257 (3d Cir. 2022)).

"Actual loss" is defined as "the reasonably foreseeable pecuniary harm that resulted from the offense." U.S.S.G. §2B1.1 cmt. n.3(A)(i)). When calculating loss under section 2B1.1(b)(1), Application Note 3(E) dictates that loss "shall be reduced by . . . the fair market value of the . . . services rendered[] by the defendant . . . to the victim before the offense was detected." *Id.* at cmt. n.3(E)(i).

The district court recognized the duty to offset the loss amount in accordance with Application Note 3(E) before summarily rejecting Ms. McComber's position that the government received the full value of its bargain for the services rendered by Ms. McComber during the indictment period, and thus, suffered no actual loss. *See* ECF No. 491 at 32:16-21, 37:9-38:1. Notwithstanding the undisputed facts that

the contract was a firm-fixed-price level-of-effort contract[4] that required a full time

program manager, and that Ms. McComber performed all duties and tasks of the

program manager to the government's complete satisfaction, the district court

calculated loss by deducting from the total invoice amount the amount of hours the

district court estimated were legitimately billed by Ms. McComber.  ECF No. 491

at 67:5-7.  The district court's loss calculation was not tied to any actual pecuniary

loss to the government.  Accounting for the fair market value of services rendered

under section 2B1.1(b)(1), there was no actual loss to the government.

In its memorandum opinion, the district court relies on the fact that "a portion

of the Contract initially included work for the Counter Terrorism Mission

Management Center" (CTMMC) and "that work was subsequently removed from

the Contract," Ex. A at 16, to somehow bolster the court's loss finding.  But that

organizational change occurred long before Ms. McComber took over as program

manager on the Ironbridge contract for a second time in March 2016, *see* ECF No.

---

[4] "A firm-fixed-price, level-of-effort term contract requires"–

    a) The contractor to provide a specified level of effort, over
       a stated period of time, on work that can be stated only in
       general terms; and

    b) The Government to pay the contractor a fixed dollar
       amount.

FAR § 16.207-1.

302 at 194:04-195:25 (J. McComber testimony), and the contract had been modified multiple times since then—including to require a full-time program manager for the indictment period notwithstanding the removal of CTMMC support. Similarly, the time billed by Ms. McComber in her first stint as program manager (when it was a part-time position) could not be used to estimate the number of hours she was properly billing during the indictment period (when it was a full-time position and when McComber's billed hours were nearly identical to her predecessor on the contract). *See* ECF No. 359 at 10 (comparing Ms. McComber's invoices to that of her predecessor).

Respectfully, there is at least a substantial question of whether the district court erred in calculating a loss amount resulting in a 10-level enhancement to the guidelines range. If there was no monetary loss to the government, the guidelines range would have been 0-6 months based on a base offense level of 6. Although the district court imposed a sentence below the erroneous guidelines range, it is likely that it would have imposed an even more lenient sentence if the starting guidelines range had been 0-6 months. *See Molina-Martinez v. United States*, 578 U.S. 189, 199–200 (2016) ("As the Court has recognized, 'when a Guidelines range moves up or down, offenders' sentences [tend to] move with it.'") (internal citations omitted); *see also United States v. Foley*, 783 F.3d 7, 23 n.13 (1st Cir. 2015) (rejecting government's argument that because the court imposed a sentence "well below the

calculated Guidelines range," any guidelines error would be harmless, finding "it at least possible that the court might have imposed an even lower variant sentence had it begun with a lower Guidelines range").

## CONCLUSION

For the foregoing reasons, Ms. McComber respectfully requests that the Court grant her motion and stay her sentence of incarceration pending appeal.

Dated: November 5, 2024

Respectfully submitted,

*/s/ Andrew S. Tulumello*
Andrew S. Tulumello
Crystal L. Weeks
WEIL, GOTSHAL & MANGES LLP
2001 M Street, NW, Suite 600
Washington, DC 20036
Telephone: (202) 682-7100
Fax: (202) 857-0940
Drew.tulumello@weil.com
Crystal.weeks@weil.com

*/s/ Paresh S. Patel*
Paresh S. Patel
ASSISTANT FEDERAL PUBLIC DEFENDER
6411 Ivy Lane
Suite 710
Greenbelt, MD 20770
Phone: (301) 344-0600
Fax: (301) 344-0019
Email: paresh_patel@fd.org

# CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to Federal Rule of Appellate Procedure 27(d), that the accompanying Motion for Stay of Incarceration Pending Appeal is proportionately spaced, has a typeface of 14 points or more, and contains 5191 words.

*/s/ Andrew S. Tulumello*
Andrew S. Tulumello