# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Appeal No. 24-4376 |
| ) | |
| JACKY LYNN McCOMBER, ) | |
| ) | |
| *Appellant.* ) | |
| _____) | |

### THE GOVERNMENT'S PARTIAL OPPOSITION TO APPELLANT MCCOMBER'S MOTION FOR LEAVE TO FILE AN OVERSIZED OPENING BRIEF OF 26,000 WORDS

The United States of America, by its undersigned counsel, hereby states the following in partial opposition to appellant McComber's Motion to Exceed Length Limitation in Appellant's Opening Brief. McComber's motion asks leave to file an oversized brief that is fully *twice* as long as the standard 13,000 word limitation established by FED. R. APP. P. 32(a)(7)(B)(i). For the reasons set forth below, we submit that this request is wildly excessive and unnecessary. Instead, we have advised appellant's counsel that we would agree to an additional 3,000 words for their opening brief (with the understanding that we would receive the same additional amount for our response brief) and an additional 1,500 words for their reply brief, in place of the 6,500 word limitation set forth in Rule

1

32(a)(7)(B)(ii), thereby providing appellant with an overall total of 4,500 additional words.

The district court's opinion (ECF # 429-1) denying the defendant's Rule 29 motion as to each of the 20 counts of conviction following briefing and the oral argument it held on January 30th (ECF #421) was comprehensive and thorough, running 69 pages.[1] Presumably, what the defense will be doing in its opening brief is summarizing the lengthy arguments it has previously presented in the district court and then explaining specifically where it believes the district court's analysis of the evidence (in its written opinion as to the Rule 29, and in its oral remarks at sentencing as to the amount of the loss) was factually mistaken or legally erroneous.

---

[1] Appellant's claim at page 2 of its motion that "the district court expended over 50 pages (approximately 18,000 words) on factual background and procedural history alone in its opinion denying Ms. McComber's motion for judgment of acquittal" is potentially misleading. The district court's opinion (ECF # 429-1) devoted only four-and-a-half pages (pages 4-9) to summarizing this case's procedural history. It then spent roughly three pages (pages 9-13) explaining the legal standards applicable to motions under Rule 29. It followed that with a meticulous factual summary of the testimony taken and the exhibits presented over the 13 days of trial in which evidence was taken (pages 13-58), before concluding with ten-and-a-half pages (pages 59-69) presenting its evaluation of that evidence and the basis for its rejection of the defense's arguments.

The underlying facts of this case are not complex at all.[2] As we previously noted in our response to the defense's "emergency" motion for release pending appeal (4th Cir. ECF # 17), the defendant was the Chief Executive Officer and 100% owner of InfoTeK (ITK), a small software development company. She was indicted on February 25, 2021 on 19 counts of violating the Federal Criminal False Claims Act (18 U.S.C. § 287) and one count of making false statements under oath to investigators from the National Security Agency's Office of the Inspector General (NSA-OIG) (18 U.S.C. § 1001). These charges grew out of the defendant's roughly 19-month tenure between March 2016 and September 2017 as the Program Manager on IRONBRIDGE, a contract between the National Security Agency (NSA) and ITK that required it to provide maintenance and enhancement support for the information technology and software requirements of the NSA's

---

[2] While this a straightforward case of billing for hours not actually worked, it is true that appellant's original trial counsel, starting in January 2022, began advancing claims with regard to non-production of supposedly relevant documents and offered an expert witness who presented no less than 62 opinions to which he proposed to testify, many of which were legally improper. These claims involved extensive briefing and at least three days of evidentiary hearings in the summer of 2022. In the end, however, these claims either proved meritless or were investigated and resolved by the government, and the proffered opinions of the defense's expert were substantially limited before he testified at trial. What is most significant, however, is that appellant's current defense counsel is raising **no** issues relating to any of these matters on this appeal. See list of issues at pages 6-7 *infra.*

National Security Operations Center (NSOC).  The indictment accused the defendant of submitting grossly inflated time claims for work she never performed on the IRONBRIDGE contract, as well as making false statements during a sworn interview with investigators of the NSA's Office of the Inspector General (NSA-OIG) in October 2017.[3]

The defense likewise inaccurately claims in its motion that the government's case all came down to an investigative spreadsheet (introduced in its entirety as Government Exhibit 21(a), and which was also presented in monthly segments corresponding to the 19 charged fraudulent monthly invoices as GXs 1(c) – 19(c)) that documented how little time the

---

[3] We will be interested in seeing the support for the defense's claim that "Based on counsel's work, criminal prosecution under the False Claims Act based on this conduct is extremely rare" (ECF # 22 at 2).  Cases involving charges of federal procurement fraud, while certainly not as common as narcotics, firearms, or violent crime prosecutions, are nevertheless a hardy perennial on federal criminal dockets, particularly in the Washington, D.C. area, and this has been true going back at least as far as the well-known Operation Ill Wind defense procurement fraud cases of the late 1980's. *See www.fbi.gov/history/famous-cases/operation-illwind*.  The undersigned counsel has himself tried two separate cases involving procurement fraud against the NSA; prosecuted another case involving overbilling the NSA for hours not worked that ended with a guilty plea; and is aware of other similar cases or investigations involving frauds against the NSA handled by other members of his office.  Obviously, such cases are prosecuted using a variety of federal statutes besides the criminal False Claims Act, as was the case here, including the False Statements Act; the Mail and Wire fraud statutes; and the Major Fraud against the United States statute (18 U.S.C. § 1031).

defendant actually spent on-site managing her contractors at the NSA, and what was known about her other, non-NSA activities on those days. Appellant's Motion at 3 ("Without the spreadsheet, Ms. McComber would not have been convicted."). If that were true, however, the government would have simply presented the spreadsheets, the testimony of the two government investigators who put them together (whose testimony on direct and cross-examination together totaled roughly 500 pages in a trial transcript of some 3,500 pages); and the documentary evidence that supported its entries. In addition to the two witnesses who prepared the investigative spreadsheet, the heart of the government's case consisted of testimony from 18 other witnesses, 15 of whom were NSA witnesses who testified about their contacts with and observations of the defendant (or the lack thereof) during the indictment period, as well as just how little administrative work the defendant's role on the IRONBRIDGE contract actually required. Furthermore, the government's case against the defendant included testimony from three former top officers of her company ITK – Shilo Weir, a former close friend of the defendant's and ITK's Chief Operations Officer, who submitted the whistleblower letter to

the NSA that kicked off the investigation; former company President Paul Rooney; and ITK's long-time Chief Financial Officer, Dwayne Preston.[4]

Moreover, of the six issues that the appellant is presenting on this appeal, four of them involve a common factual basis and thus significantly overlap with one another. These issues (1, 2, 5, and 6) are highlighted in boldface below:

> **Issues on Appeal (as tendered by appellant's counsel)**
>
> 1. **Insufficient evidence on all counts as to material falsity and knowledge**
>
> 2. **Error in admitting government spreadsheet under FRE 1006 because it was inaccurate, misleading, and contained hearsay evidence**
>
> 3. Erroneous jury instruction regarding off-site work shifted burden of proof to defendant
>
> 4. Prosecutorial misconduct based on (1) improper burden shifting during the government's closing argument and cross examination of Ms. McComber, and (2) statements made during the government's closing argument appealing to the individual pecuniary interests of jurors
>
> 5. **Guidelines range was improperly calculated based on loss amount**

---

[4] As for the defense's claims that this case involved a "niche" contract (Motion at 3 & 4), that is likewise not the case. This was a Firm Fixed Price – Level of Effort contract, an established type that is described in the Federal Acquisition Regulations (FAR) and is in particularly common use at the NSA because the complex and technical nature of its work often makes it difficult to predict exactly how much work a contract will require in advance. The 19 invoices at issue in this case, moreover, all simply involved ITK billing for the number of hours the defendant claimed she had worked at a set hourly rate with no other complicating factors.

### 6. **Restitution amount was improper based on loss amount**

As for issues 3 and 4, they involve tiny portions of the record and should not require extended argument to address.

Government counsel certainly is not of the view that appropriate brief length in appellate cases is a one-size-fits-all proposition. Our Office, while recognizing the staggering amounts of brief-reading that their responsibilities impose upon the judges of this court, nevertheless makes a point of conceding in appropriate cases when we believe defense counsel should be allowed to file briefs in excess of 13,000 words. *See, e.g.*, *United States v. Dante Bailey*, Appeal No. 20-4266, ECF # 94-1 (the government consented to the defense's request to file an opening brief of 24,000 words in a case involving a 22-day racketeering trial of five defendants involving charges of conspiracy, drug trafficking, firearms possession and murder committed in aid of racketeering that involved conduct extending over a period of at least four years). In this case, in contrast, one defendant was charged under only two criminal statutes, and it involved a time period and a range of alleged criminal conduct far narrower than that at issue in *Bailey* – yet defense counsel here is seeking authorization to file a brief more than 2,000 words longer than that sought by the five defense counsel in *Bailey*. We have therefore limited our consent in this case to agreeing to permit the

appellants to file an opening brief of up to 16,000 words and a reply brief of 8,000 words.

Respectfully submitted,

EREK L. BARRON
UNITED STATES ATTORNEY

/s/
_____

Jefferson M. Gray
Assistant U.S. Attorney

U.S. Attorney's Office
District of Maryland
36 S. Charles Street, 4th Floor
Baltimore, MD 21201
(410) 209-4915
Jefferson.M.Gray@usdoj.gov

*Counsel for the United States*